Johnson & Dix, Inc., d/b/a Johnson Enterprises and Johnson & Dix Fuel Corp. v. Springfield Fuels, Inc., et al.

[303 A.2d 151]

No. 39-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 3, 1973

*Parker, Ainsworth & Richards,* Springfield, for Plaintiffs.

*Parker & Lamb,* Springfield, for Springfield Fuels, Inc., and Robert D. Rogers, Defendant.

*Natt L. Divoll, Jr., Esq.,* Bellows Falls, for Winston Cook, Defendant.

**Barney, J.** Four fuel companies are involved in this action. Cook's Oil Service in Chester, Vermont, owned by defendant Cook, was purchased by Johnson & Dix, Inc., an oil company of Springfield, Vermont, which was the wholesale supplier for Cook. About three years later, the retail fuel oil business of Johnson & Dix, Inc., was purchased by another and unrelated corporation, Johnson & Dix Fuel Corporation. Thereafter, Cook, accepting employment with one Rogers, a former officer of Johnson & Dix, Inc., who had organized Springfield Fuels, Inc., and entered the retail fuel oil business, began soliciting Cook's former customers in the Chester area. Since, in the original purchase of Cook's Oil Service, the defendant Cook executed a ten-year agreement with the purchaser, Johnson & Dix, Inc., not to compete or engage in this business within fifty miles of Chester, a lawsuit resulted. It was brought by the succeeding purchaser, Johnson & Dix Fuel Corporation against Cook, Rogers and Springfield Fuels, Inc.

The complainant sought equitable relief by way of an injunction as well as compensatory damages for lost business. The lower court refused that relief, but did give the plaintiff judgment against Cook for the amount of a cash advance and the value of some fuel oil furnished to him personally, as revealed by the evidence. Johnson and Dix Corporation attacks the failure of the court below to give the relief sought, and defendant Cook challenges the judgment against him as not supported by the pleadings.

A closer look at the original transaction between Cook and Johnson & Dix, Inc., discloses that the sale involved the execution of two instruments. The first, a "Buy and Sell Agreement" dealt with the sale of the business known as Cook's Oil Service. As might be expected, the agreement deals extensively with the customer lists and accounts, and the gallonage and accounts receivable they represent. The arrangement protects the transfer of this critical aspect of the business by reducing the price to be paid over a three year period by the percentage reduction in gallonage, or retained business. Similarly, uncollectible accounts were, after one year, to be charged back to Cook, the seller.

Along with this agreement which carefully measured the price by the retained business, there was executed a second agreement called a "None [sic] Compete Agreement." In this document Cook promised Johnson & Dix, Inc., to refrain for ten years from conducting or engaging in, either alone or as an employee of another, any fuel oil distribution, including burner service business within a radius of fifty miles of the Town of Chester. The agreement provided for resort to injunctive relief, if violated, and contained no reference whatever to assignability.

Cook then went to work for Johnson & Dix, Inc., and remained so employed through the period of sale of the retail fuel business to Johnson & Dix Fuel Corporation. That corporation kept him on, but about two weeks after the sale he resigned, joined Rogers, a former Johnson & Dix, Inc., general manager, in his Springfield Fuels, Inc., enterprise.

The court below found two things not in dispute about the non-compete agreement. First, it found no words of assignability in the agreement. Second, it found that there was

no written assignment or attempted assignment of that agreement by Johnson & Dix, Inc., to Johnson and Dix Fuel Corporation. With these facts in mind, the court went on to find the non-compete agreement to be "personal between the Defendant Cook and Johnson & Dix, Inc., and was not assignable to Johnson & Dix Fuel Corporation without the consent of Cook." The court indicated that the plaintiffs failed to establish by the required burden of proof that the parties to the agreement intended that it be assignable.

The plaintiff seeks to overcome these findings by arguing that customer accounts were an asset of Cook's business, protected as part of "goodwill" by the non-compete agreement. From this it says the subsequent sale of the retail fuel oil business to the plaintiff corporation must encompass this "goodwill" and its protecting agreement.

Two circumstances encumber their position. The first is the factual determination of the court that the sale by Johnson & Dix, Inc., to the plaintiff Johnson & Dix Fuel Corporation neither refers to the non-compete agreement nor purports to guarantee to the plaintiff any gallonage. The second is that the non-compete agreement can justifiably be viewed as a separate, personal undertaking since the buy and sell agreement contained its own specific provisions relating to the customer lists and gallonage representing the "goodwill" of Cook's Oil Service. With the facts so established, our case law requires the application of the doctrine of *Smith, Bell & Hauck, Inc.* v. *Cullins*, 123 Vt. 96, 102, 183 A.2d 528 (1962), and the sustaining of that portion of the decision below.

A further issue requires attention. The defendant Cook complains of the imposition of a judgment against him by the lower court for moneys advanced and fuel oil furnished for his personal use. His contention is that since these issues were not raised by any pleading, he had no notice or opportunity to file pleadings in opposition to support any evidence in defense he wished to advance.

It is true that V.R.C.P., Rule 54(c) allows the granting of relief by way of judgment to the party entitled, even though such relief has not been asked for in his pleadings. However, there is, and must be, an unstated premise in that rule that limits such relief to remedies generally within the

ambit of the controversy being litigated, to say the least. Otherwise, vital requirements critical to due process, such as notice of claims and defenses, could be overridden. The situation has been remarked on in several cases, of which *Cutler Co.* v. *Barber,* 93 Vt. 468, 108 A. 400 (1919), is an example. That case involved a suit to enjoin the erection of a building on land claimed to be owned by the plaintiff. The decree below also disposed of a certain easement about which there was testimony in the case. This Court determined that the existence and rights in the easement were not in issue in the case and beyond the allegations of the bill. The decree was accordingly modified.

██ This case is much the same. Although not put in issue by the plaintiff's request for an injunction and for damages consequent on the breach of the non-compete agreement, one witness did remark that the defendant Cook was still indebted to Johnson & Dix, Inc., for money loaned and fuel oil supplied his residence while he was an employee of that company. The lower court drew that information out of the testimony and made it into a judgment amount without any supporting allegation in the complaint. It cannot stand.

██ It is perhaps noteworthy that in their brief before this Court the plaintiffs, as appellants, together seek reversal with no word as to reservation or restriction to preserve the portion of the judgment relating to recovery of these personal items against defendant Cook. Accordingly, we conclude they concede that such issues are no proper part of this litigation and should not be disposed of by the judgment order.

*The decree is reversed and the cause is remanded for the drafting of a new decree denying injunctive relief to the plaintiffs and awarding costs to the defendants, all in accordance with the views expressed in the opinion.*